IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ESSEX INSURANCE COMPANY,

     Plaintiff,

v.                                       Civil Action No. 5:13CV115
                                                   (STAMP)
NAPPLE'S BULLPEN, LLC,
a West Virginia limited
liability company,
PATRICK MICHAEL NAPPLE
and WHEELING COIN, LLC,
a West Virginia limited
liability company,

     Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING IN PART AND GRANTING IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

          I.    *Procedural History*

     The plaintiff, Essex Insurance Company ("Essex"), has filed a declaratory judgment action in this Court to determine whether it has a duty to provide coverage to the defendants in an underlying state court action filed by Douglas Ayers in the Circuit Court of Ohio County, West Virginia ("Ayers state court action"). In Essex's complaint, Essex claims that it is not required to provide a defense for any of the defendants, although it is currently providing a defense for defendant Wheeling Coin, LLC ("Wheeling Coin") in the Ayers state court action under a reservation of rights agreement. Essex asserts that it does not have to defend Wheeling Coin because the Ayers state court action is based on

claims of premises liability and a violation of West Virginia public safety laws.

The underlying action that gave rise to this case involved a battery that occurred outside of Napple's Bullpen Bar ("Napple's Bar") in Elm Grove, Ohio County, West Virginia. Essex in the Ayers state court action has brought suit in the Circuit Court of Ohio County, West Virginia against all three defendants claiming premises liability and violation of the West Virginia state law that prevents the sale of alcohol from 3:30 a.m. to 7:00 a.m.[1]

Essex asserts in its complaint that under the insurance policy at issue, there is an exemption of coverage for liquor liability and assault and/or battery which allows Essex to disclaim coverage to any of the defendants in the Ayers state court action. Essex claims that the Ayers state court action falls within that exemption because the statutory public safety laws claimed by Douglas Ayers relate to the sale, gift, or distribution of liquor which is not covered under the policy. Further, Essex asserts that it has no duty to the other two defendants, Napple's Bullpen, LLC and Patrick Michael Napple ("the Napple defendants"), because they were not insured under the policy. In the alternative, if the

---

[1]The West Virginia Alcohol Beverage Control Commission has set forth the following regulation: "No licensee shall . . . sell, give or dispense alcoholic liquors or nonintoxicating beer, or permit the consumption thereof, on any licensed premises or in any rooms directly connected therewith, between the hours of three thirty a.m. (3:30 AM) and seven a.m. (7:00 AM) on any weekday." W. Va. Code R. § 175-2-4.

Court finds that they were, Essex asserts the same claims as against Wheeling Coin.

After filing the complaint asserting the above claims, default was entered by the Clerk of Court against Wheeling Coin after Wheeling Coin failed to make an appearance or participate in anyway in this action. Thereafter, Essex filed a motion for default judgment. This Court previously found that Wheeling Coin had defaulted and that it had no right to be further involved in this action. ECF No. 21. However, given that there were other defendants, this Court found that it had to defer judgment on default pursuant to Federal Rule of Civil Procedure 54(b). As such, Essex's motion for default judgment is still pending. This Court then entered a scheduling order. Essex was the only party to file a dispositive motion and a review of the docket report shows that no formal discovery has taken place in this case.

In its motion for summary judgment, Essex first argues that there are no genuine issues of material fact as Wheeling Coin has defaulted in this action and was the only named insured under the insurance policy in question. Further, Essex asserts that even if the Napple defendants are insureds, the "liquor liability" and "assault and/or battery" exclusions in the policy would not provide coverage. Additionally, Essex contends that there was no "occurrence" that would qualify under the policy because the assault on Douglas Ayers was not an accident. Finally, Essex

3

argues that the Napple defendants have defaulted as they did not file a responsive pleading within 14 days after this Court denied their motion to dismiss.

In response, the Napple defendants contend that summary judgment is not appropriate as discovery has not been completed in state court. The Napple defendants assert that it is unclear whether or not Wheeling Coin and the Napple defendants, in their joint venture (which is disputed by Essex), contributed to the intoxication of any person involved in the altercation with Ayers and thus there is a genuine dispute as to whether or not the exclusions claimed by Essex apply in this case. Finally, the Napple defendants assert that the policy language as to "occurrence" is ambiguous because the policy provisions also include the descriptors "bodily injury" or "property damage."

Essex, in reply, asserts that the Napple defendants cannot rely on an argument that discovery needs to take place in the Ayers state court action to defend against the motion for summary judgment. Essex contends that under West Virginia law, this Court is to look to the allegations in the complaint rather than the veracity of those claims in determining whether an insurance company has a duty to defend. Essex then goes on to reiterate its previous argument as to the Napple defendants' lack of coverage under the policy. Further, Essex argues that the Napple defendants' assertion that the "occurrence" language is ambiguous

is not supported and that the policy provisions make it clear that "occurrence" only applies to accident claims, not those caused by intentional acts. Finally, Essex notes that the Napple defendants do not contest the fact that the liquor liability exclusion is unambiguous.

Essex's motion for summary judgment is now fully briefed. Further, Essex's motion for default judgment is still pending before this Court as this Court had previously deferred judgment. Based on the following, this Court finds that Essex's motion for default judgment should be denied in part as it pertains to the Napple defendants and granted in part as it pertains to Wheeling Coin. However, Essex's motion for summary judgment should be granted.

## II. <u>Applicable Law</u>

A. <u>Default Judgment</u>

The United States Court of Appeals for the Fourth Circuit favors resolution of disputes on their merits. <u>Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.</u>, 616 F.3d 413, 417 (4th Cir. 2010). Nonetheless, the Court may properly grant default judgment if the "adversary process has been halted because of an essentially unresponsive party." <u>SEC v. Lawbaugh</u>, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Federal Rule of Civil Procedure 12 sets forth the times by which a party must serve a responsive pleading. Specifically, Rule 12 holds that if a party responds to

the complaint by motion and that motion is then denied by the Court, "the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(a). However, "default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251 (4th Cir. 1967).

B. Summary Judgment

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

Further, summary judgment is generally appropriate only after adequate time for discovery. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). "[S]ummary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250 n.5. However, "great weight [is placed] on the [Federal Rule of Civil Procedure] Rule [56(d)] affidavit, believing that a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirements of Rule [56(d)] to set out reasons for the need for discovery in an affidavit." Evans, 80 F.3d at 961. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. <u>Discussion</u>

A. <u>Default Judgment</u>

In this action, defendant Wheeling Coin has been dismissed as a participating party by this Court because default was entered against it. However, the Napple defendants have taken some action in the instant case to raise a meritorious defense to Essex's allegations. The Napple defendants responded both to Essex's complaint by filing a motion to dismiss and have responded to Essex's motion for summary judgment. However, the Napple defendants did not file an answer within 14 days of this Court's order denying their motion to dismiss and thus did not follow the procedure set forth under Rule 14 of the Federal Rules of Civil Procedure. Despite their failure, however, this Court finds that default judgment is not appropriate as to the Napple defendants as they have at least put forth a defense to the allegations made in Essex's complaint by way of a motion to dismiss and by way of their response in opposition to Essex's motion for summary judgment. Accordingly, as a default judgment is to be used sparingly, this Court finds that Essex's motion for default judgment should be denied in part inasmuch as it pertains to the Napple defendants.

B. <u>Motion for Summary Judgment</u>

The Napple defendants have raised two main defenses to Essex's motion for summary judgment. First, the Napple defendants contend that summary judgment is inappropriate at this time because more

discovery is needed in order to determine what actually happened to Ayers at the Napple's Bar.  Thus, the Napple defendants argue that more discovery is needed in the Ayers state court action.  First, the Napple defendants argue that they are covered by the insurance policy as they were involved in a joint venture with Wheeling Coin. Further, the Napple defendants contend that coverage is appropriate because the insurance policy exclusions that Essex raises are not applicable.

This Court will, for purposes of this opinion, assume that the Napple defendants had entered into a joint venture without actually finding that a joint venture existed between the defendants.  This is so because even if the Napple defendants were involved in a joint venture with Wheeling Coin, they would not be entitled to coverage under the insurance policy because of the exclusions that apply based on the allegations put forward in the Ayers state court action.

1. <u>Discovery Request</u>

The Napple defendants argue that Essex's motion for summary judgment is premature and should be denied to allow for sufficient discovery in the Circuit Court of Ohio County action.  The Napple defendants argue that more discovery is required in the Ayers state court action to determine what actually occurred at the Napple's Bar the night of the alleged incident and whether the incident is covered by the insurance policy.

Generally, "summary judgment is appropriate only after adequate time for discovery." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (internal quotations and citations omitted). "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule [56(d)] affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'"[2] Harrods Ltd v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans, 80 F.3d at 961). The United States Court of Appeals for the Fourth Circuit has stated that a failure to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (internal quotations and citations omitted). The failure to file a Rule 56(d) affidavit, however, may be excused "if the nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit,' and if the nonmoving party was not lax in pursuing discovery." Id. at 244-45 (quoting First Chicago Int'l v. United Exchange Co., 836 F.3d 1375, 1380 (D.D.C. 1988)).

---

[2]While Harrods and cases prior to the 2010 Amendments to the Federal Rules of Civil Procedure refer to these affidavits as Rule 56(f) affidavits, such affidavits are now properly filed pursuant to Rule 56(d) which "carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's note; see also Radi v. Sebelius, 434 F. App'x 177, 178 n.1 (4th Cir. 2011).

10

In this case, the Napple defendants have failed to file a Rule 56(d) affidavit. Further, the Napple defendants had an opportunity to conduct discovery in this Court and have chosen not to do so. Thus, the Napple defendants' objections at this point that more discovery is needed do not amount to the "functional equivalent of an affidavit" and thus, this Court will not excuse the failure to file a Rule 56(d) affidavit.

The Napple defendants have asserted that more discovery is required, not in this Court, but in the state court. However, the Napple defendants' argument fails in that there was little if no effort by them in this Court to conduct discovery and thus support their request for discovery after the period for discovery lapsed.

2. <u>Insurance Policy Exclusions</u>

The parties disagree as to whether certain exclusions–liquor liability, assault, and "occurrence"–in the insurance policy are applicable in this action. Essex contends that they are applicable because Ayers, the alleged victim, has alleged that the incident occurred because the Napple defendants served alcohol outside of a time allowed by West Virginia statute, an assault occurred, and the injury to the victim was intentional and not by accident. The Napple defendants, on the other hand, argue that it is unclear whether or not the exclusions apply because more discovery is needed to discern whether or not the Napple defendants provided alcohol to the alleged assailants. As this Court has already found

11

that the Napple defendants are not entitled to more discovery, this argument is moot. However, this Court will still determine whether or not, given the facts furnished to the Court, the policy exclusions are applicable. Finally, the Napple defendants assert that the term "occurrence" is an ambiguous policy term.

The West Virginia Supreme Court has found that an insurance company may decide "whether it must provide liability coverage and/or a defense to the insured based upon two documents: the complaint, and the insurance policy." West Virginia Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 498-99 (W. Va. 2004). Thus, resolution of the duty-to-defend question "requires examination of (1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995). "This principle is [sometimes] known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy." First Tenn. Bank Nat'l Ass'n v. St. Paul Fire & Marine Ins. Co., 501 F. App'x 255 (4th Cir. 2012).

In applying the eight corners rule, a court must look to the language of the insurance policy which "should be given its plain, ordinary meaning." Syllabus Point 1, Mylan Labs Inc. v. Amer. Motorists Ins. Co., 700 S.E.2d 518 (W. Va. 2010). "'Where the

provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.'" Syllabus Point 2, id. (citation omitted). However, if the language of an insurance policy provision is "reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syllabus Point 3, id.

    i. <u>Liquor Liability Exclusion</u>

The liquor liability exclusion at issue in this action precludes coverage for bodily injury claims for which an insured may be held liable by reason of (1) causing or contributing to the intoxication of any person; (2) furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages. ECF No. 1-1 *23. The West Virginia Alcohol Beverage Control Commission has set forth the following regulation: "No licensee shall . . . sell, give or dispense alcoholic liquors or nonintoxicating beer, or permit the consumption thereof, on any licensed premises or in any rooms directly connected therewith, between the hours of three thirty a.m. (3:30 AM) and seven a.m. (7:00 AM) on any weekday." W. Va. Code R. § 175-2-4.

The West Virginia Supreme Court has found that the plain meaning of a liquor liability exclusion like the one cited above is that "the insurance does not apply to bodily injury for which the insured may be liable if the insured caused or contributed to the intoxication of the person involved and the insured is in the business of . . . serving or furnishing alcoholic beverages." Kelly v. Painter, 504 S.E.2d 171, 174 (W. Va. 1987). In addition, this Court has adopted such a finding. Essex Ins. Co. v. Tri-Area Amusement, Co., Civil Action No. 5:09CV23, 2010 WL 148381 *13 (N.D. W. Va. Jan. 12, 2010). Further, the Ayers plaintiff has set forth in his complaint that the incident complained of occurred in part because alcohol was served at the Napple's Bar after 3:30 a.m. in violation of the West Virginia Code and that the assailant was a patron of the Napple's Bar. ECF No. 1-2 *5.

The liquor liability exclusion is unambiguous, as found by the West Virginia Supreme Court. Further, the allegations of the underlying complaint fall into either the first exception, causing or contributing to the intoxication of any person who was the cause of a liability, or the third exception, liability for an injury under a statute, of that exclusion. As such, given the eight corners rule, the liquor liability exclusion applies to the Napple defendants.

14

### ii. Assault/Battery Exclusion

In the underlying Ayers state court complaint, Ayers complains that he was "attacked, robbed and brutally beaten." ECF No. 1-2 *5. Ayers also alleges that one of the assailants has already been convicted of felony charges in conjunction with the beating. ECF No. 1-2 *5. Further, the complaint alleges that the incident occurred because of the "Defendants tortious acts and omissions" and that Ayers sustained severe injuries. ECF No. 1-2 *5-6. The assault/battery exclusion in the applicable insurance policy provides that coverage does not apply to claims for "bodily injury" "arising out of . . . [a]ssault and/or battery, or any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the direction of any insured, insured's 'employees', patrons or any other person." ECF No. 1-1 *17.

Given the allegations of the complaint in conjunction with the policy language, it is clear that the Napple defendants are not entitled to coverage under the insurance policy. Ayers asserts that bodily injury occurred, covering the first part of the exclusion. He then alleges that a brutal beating took place, which is read in conjunction with the "assault and/or battery" language of the exclusion. In addition, the beating described in the complaint would fall under the definition of battery in the West Virginia Code and thus would exclude the Napple defendants from

15

coverage.[3] Finally, the complaint also alleges that the incident occurred because of acts or omissions by the Napple defendants. Thus, the Napple defendants are excluded under either the "assault and/or battery" language or the "act or omission" language of the assault/battery exclusion.

### iii. Occurrence Exclusion

The Napple defendants contend that "occurrence" is an ambiguous term and thus summary judgment should not be granted. The Commercial General Liability Coverage Part states that the insurance applies to bodily injury only if the bodily injury "is caused by an 'occurrence' that takes place in the 'coverage territory.'" The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ECF No. 1-1 *35.

This Court has previously found this exclusionary language to be unambiguous and that "when a person 'engages in conduct knowingly, that conduct clearly cannot be said to be unexpected and unforeseen from the perspective' of that person." Tri-Area Amusement Co., 2010 WL 148381 at *12 (citing Am. Modern Home Ins. Co. v. Corra, 671 S.E.2d 802, 806 (W. Va. 2008)). This Court further found that "'conduct engaged in knowingly is not an

---

[3]West Virginia Code § 61-2-9 uses the following definition for battery: "Battery. -- Any person who unlawfully and intentionally makes physical contact with force capable of causing physical pain or injury to the person of another or unlawfully and intentionally causes physical pain or injury to another person . . . ."

16

'accident' and thus not an 'occurrence' under [the insurance] policy.'" Id. at *12-13.

The Ayers complaint alleges that Ayers was brutally beaten by three assailants, one of which of was a patron of the Napple's Bar and has already been convicted of felony charges in relation to the underlying incident. As stated previously, this allegation appears to fall within the West Virginia Code provision for battery. As battery is an intentional act, the underlying incident would not be an "occurrence" and thus would be precluded from coverage. See Mt. Vernon Fire Ins. Co. v. Dobbs, 873 F. Supp. 2d 762, 766 (N.D. W. Va. 2012).

Because the Napple defendants are not entitled to further discovery and because the three exclusions described above are applicable to the underlying incident, the Napple defendants are not entitled to coverage pursuant to the Essex insurance policy. Thus, Essex is entitled to a favorable judgment as a matter of law. Additionally, because (1) this Court has now found that the Napple defendants are not entitled to coverage and (2) this Court had previously found that Wheeling Coin defaulted, this Court now finds that the motion for default judgment is granted as to Wheeling Coin as there are no co-defendants left in this action that may receive a ruling other than the one announced in this order. See Fed. R. Civ. P. 54(b); ECF No. 21.

17

## V. Conclusion

Based on the analysis above, this Court finds that Essex Insurance Company, as a matter of law, has no duty under Essex Insurance Company Policy Number 3D3504 to indemnify and defend Napple's Bullpen, LLC, Patrick Michael Napple, or Wheeling Coin, LLC. As such, Essex's motion for summary judgment (ECF No. 22) is GRANTED. Further, for the reasons stated previously, Essex's motion for default judgment (ECF No. 14) is DENIED IN PART as it pertains to Napple's Bullpen, LLC, and Patrick Michael Napple and is GRANTED IN PART as it pertains to Wheeling Coin, LLC.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   July 17, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE